UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEWAYNE HULL,

                    Plaintiff,

       v.                                                    Case No. 25-cv-1568-pp

CAPTAIN BELONGIA, *et al.*,

                    Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 7) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

       Plaintiff Dewayne Hull, who is incarcerated at Fox Lake Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, screens his complaint, dkt. no. 1, and addresses his motion to appoint counsel, dkt. no. 7.

**I.      Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

       The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

1

On November 6, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $20.44. Dkt. No. 6. The court received that fee on November 25, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable

2

inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The plaintiff sues Captain Belongia, Captain Draves, Sergeant Lehner, CO II Held, Security Director Sanchez and R. Rominoky, who work at Fox Lake. Dkt. No. 1 at 1. He alleges that he works in his unit's "servery" and as an informant to Lehner, Held and Sergeant Parpar (not a defendant). Id. at 2. In May 2025, the plaintiff allegedly told Sergeant Parpar that an incarcerated person named John White was preparing to steal food from the servery where they both worked. Id. White allegedly was subsequently caught stealing a pitcher full of Apple Jacks. Id. The plaintiff states that White was terminated from his position and went on a "rampage" about the plaintiff being a "snitch." Id. The plaintiff allegedly asked Parpar why White had not been sent to the restrictive housing unit, and he said he would speak to Belongia. Id. at 2-3.

The plaintiff alleges that on August 4, 2025, he informed Sergeants Southland and Parpar (not defendants) that cereal was missing from the servery. Id. at 2. Belongia allegedly reviewed the camera and saw that White

3

had stolen food. Id. The plaintiff states that White was not placed in segregation or moved off the unit. Id. The plaintiff alleges that "neither defendant did anything reasonable to protect [the plaintiff] from being assaulted. They did not move [White] to another unit, send him to (seg) for the theft, nothing!" Id.

On August 5, 2025, White allegedly found out that the plaintiff was a snitch a second time and he yelled in front of Parpar and other incarcerated individuals that the plaintiff was a snitch. Id. The plaintiff states that nothing was done to protect him from harm or to prevent physical danger from White. Id. The plaintiff states that this was the second time he had given DOC employees information on White, and he says that Lehner, Held, Parpar, Belongia and Draves refused to place White on another unit or in restrictive housing "so he could not retaliate as he vowed to do after [an] officer made him aware I told on him again." Id. Lehner and Parpar allegedly told the plaintiff that it was up to Belongia, and Belongia told the plaintiff that individuals are not sent to segregation for theft. Id. The plaintiff alleges that other incarcerated individuals have been sent to segregation for theft. Id.

The plaintiff alleges that on August 7, 2025, White attacked the plaintiff while he was sitting in the dayroom eating. Id. at 4. The plaintiff states that White punched him under his eye, placed his hands around the plaintiff's neck and forced him to the floor, damaging his leg and groin area where he had just had surgery. Id. The plaintiff asserts that as he stood up to defend himself, Held and Lehner stepped in to stop the fight. Id. Upon being handcuffed, White allegedly yelled, "Snitch," "That what you get snitch." Id.

The plaintiff alleges that after the incident, he exhausted his administrative remedies. Id. at 5. He states that he first wrote to Sanchez but

4

didn't receive a response. Id. He alleges that on August 18, 2025, he submitted an inmate complaint, but Rominsky erroneously returned it. Id. at 5-7. The plaintiff states that he also filed a complaint against Rominsky for his unlawful failure to process the plaintiff's complaint. Id. at 8.

For relief, the plaintiff seeks injunctive relief as well as compensatory, nominal and punitive damages. Id. at. 9.

C.    Analysis

The Eighth Amendment requires prison officials to protect incarcerated persons from violence at the hands of other incarcerated persons. See Farmer v. Brennan, 511 U.S. 825, 833-34 (1994). Prison officials who do not protect one incarcerated individual from another may be found liable under the Eighth Amendment only if two requirements are met: first, the incarcerated individual must have been exposed to a risk of objectively serious harm, and second, the prison official must have had actual knowledge of that risk and responded with deliberate indifference. See LaBrec v. Walker, 948 F.3d 836, 841 (7th Cir. 2020); see also Farmer, 511 U.S. at 837-38.

The plaintiff may proceed on an Eighth Amendment claim against defendants Lehner, Held, Belongia and Draves in their individual capacities based on allegations that they did not separate White from the plaintiff after the plaintiff told them that White had threatened him and called him a snitch. See Gevas v. McLaughlin, 798 F.3d 475, 480 (7th Cir. 2015) ("In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety.") (quoting Pope v. Shafer, 86 F.3d 92 (7th Cir. 1996)).

The plaintiff also alleges that Sanchez and Rominoky didn't respond to or properly process his administrative complaints about the incident. But the

5

"alleged mishandling of [the plaintiff's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." Owens v. Hinsley, 635 F.3d 950, 953-54 (7th Cir. 2011) (citing George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007)). The court will dismiss defendants Sanchez and Rominoky.

### III.     Plaintiff's Motion to Appoint Counsel (Dkt. No. 7)

The plaintiff has filed a motion to appoint counsel. Dkt. No. 7. He states that he tried to find a lawyer on his own. Id. The plaintiff says that he has a jailhouse lawyer helping him, which is not allowed at Fox Lake. Id. He also asserts that he doesn't have sufficient education to litigate, that he has been diagnosed with PTSD and he is on "heavy medication[.]" Id.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the

court may also consider the merits of a plaintiff's claim and what is at stake. Watts v. Kidman, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the

7

case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." <u>Pickett</u>, 930 F.3d at 871.

The plaintiff says that he tried to find a lawyer on his own, but he submitted letters from only two lawyers. To satisfy the threshold requirement of trying to find a lawyer on his own, the plaintiff must contact at least one more lawyer and provide the court with the information described above. However, even if the plaintiff had satisfied the requirement that he find a lawyer on his own, the court would not recruit a lawyer for him at this time. His Eighth Amendment claim is straightforward, and he has personal knowledge of the facts of his claim. Based on the plaintiff's filings, he appears competent to engage in discovery and respond to a motion for summary judgment. To the extent that the plaintiff says that he had a jailhouse lawyer assisting him, the court cannot adequately judge the plaintiff's capabilities to proceed without a lawyer. Along with this order, the court will send the plaintiff a guide for incarcerated litigants that he may find helpful in litigating his claim. After the defendants file a responsive pleading to the complaint, the court will issue a scheduling order setting deadlines for the parties to complete discovery and file motions for summary judgment which will include information and procedural rules for the parties on conducting discovery. The court will deny without prejudice the plaintiff's motion to appoint counsel.

Finally, the plaintiff asks to be allowed to pay the balance of the filing fee from his release account. Dkt. No. 7. The Prison Litigation Reform Act (PLRA) requires the court to collect filing fees from a "prisoner's account." 28 U.S.C. §1915(b). The term "prisoner's account" encompasses both an incarcerated person's release account and his general account. <u>Spence v. McCaughtry</u>, 46 F. Supp. 2d 861, 862 (E.D. Wis. 1999). "'Release account' means an account

established for an inmate in which a percentage of the inmate's income is deposited, in accordance with s. DOC 309.466 so that the inmate has sufficient funds when released from the institution to purchase release clothing, out-of-state transportation, and other items and services needed on release." Wis. Admin. Code §DOC 309.02(18). Given the purpose of the release account, federal courts do not focus on that account as the source of funds to satisfy filing fee payment requirements. Smith v. Huibregtse, 151 F. Supp. 2d 1040, 1042 (E.D. Wis. 2001).

The plaintiff has not explained why he wants to use his release account. Moreover, this order grants the plaintiff's motion for leave to proceed without prepaying the filing fee under 28 U.S.C. §1915(b)(1). The court must order collection of the balance of the filing fee in installments as required under §1915(b)(1). The court will deny the plaintiff's request to pay the balance of the filing fee from his release account.

## IV.    Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 7.

The court **DISMISSES** defendants Security Director Sanchez and R. Rominoky.

The court **DENIES** the plaintiff's request to pay the balance of the filing fee from his release account. Dkt. No. 7.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on

9

defendants Captain Belongia, Captain Draves, Sgt. Lehner and CO II Held. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$257.88** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Fox Lake Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

10

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 23rd day of June, 2026.

BY THE COURT:

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**

11